UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
Civil Action No. 5:23-cv-00156-LLK

**MATTHEW S.**                                                                                                     **PLAINTIFF**

v.

**MARTIN O'MALLEY, Commissioner of Social Security**                                       **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiff filed a complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for Social Security disability benefits. [Doc. 1]. Plaintiff's brief in support of judicial review is at Doc. 11, and the Commissioner's response in opposition is at Doc. 13. Plaintiff's reply, if any, was due on May 20, 2024, making this matter ripe for ruling. The parties have consented to the jurisdiction of the Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [Doc. 7].

Because one of Plaintiff's arguments is persuasive and the Administrative Law Judge's (ALJ's) decision is not supported by substantial evidence, the Court will REMAND this matter to the Commissioner for a new decision.

### The ALJ's decision

On August 18, 2023, the ALJ issued the Commissioner's final decision denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. [Doc. 6 at 15-33]. The ALJ found that Plaintiff was not disabled from May 29, 2018, when he alleges that he became disabled, through March 31, 2022, when he was last insured for Title II benefits. *Id.*

The ALJ's decision was based on the five-step sequential evaluation process, which applies in all Social Security disability cases.

First, the ALJ found that, during the relevant period between May 29, 2018, and March 31, 2022, Plaintiff did not engage in substantial gainful activity. *Id.* at 18.

1

Second, the ALJ found that Plaintiff had the following severe, or vocationally significant, impairments: migraines, syrinx of spinal cord, degenerative disc disease, arthritis of both feet, depression, attention deficit hyperactivity disorder, and post-traumatic stress disorder. *Id.*

Third, the ALJ found that Plaintiff had no impairment satisfying the medical criteria of any impairment listed in Appendix 1 of the regulations. *Id.*

As in any case that proceeds beyond Step 3, the ALJ determined Plaintiff's residual functional capacity (RFC), which is defined as the "most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ found that, during the relevant period between May 29, 2018, and March 31, 2022, notwithstanding his physical impairments, Plaintiff could:

> … perform medium work as defined in 20 CFR 404.1567(c) except he occasionally needed to use a cane for ambulation … could stand/walk six hours in an eight-hour workday … could sit six hours in an eight-hour workday … could lift and carry, and push/pull 50 pounds occasionally and 25 pounds frequently … could frequently climb ramps and stairs, and occasionally climb ladders, ropes and scaffolds … could frequently stoop, kneel, crouch and crawl … needed to avoid concentrated exposure to vibrations and to hazards including unprotected heights and moving mechanical parts[.]

*Id.* at 20. The ALJ found that, notwithstanding his migraines, Plaintiff could:

> … work in environments having no more than a moderate noise level as described in the Selected Characteristics of Occupations defined in the Revised Dictionary of Occupational Titles, 1993, Appendix D, Environmental Conditions … needed to avoid concentrated exposure to flashing lights or lighting brighter than fluorescent lighting ordinarily found in office environments.

*Id.* The ALJ found that, notwithstanding his mental impairments, Plaintiff could:

> … understand and remember simple and detailed, not complex, instructions … could sustain attention and concentration for simple and detailed, not complex, tasks over two-hour work segments with normal breaks … could interact with the public, coworkers and supervisors occasionally or up to one-third of the time … could adapt to situational conditions and normal changes in a routine work environment.

*Id.*

Fourth, the ALJ found that Plaintiff was unable to perform any past relevant work. *Id.* at 31.

Fifth, the ALJ found that Plaintiff was able to perform a significant number of unskilled, sedentary jobs in the national economy such as document preparer, parts inspector, and lens inserter. *Id.* at 32.

**Legal Standards**

The task in reviewing the ALJ's findings is limited to determining whether they are supported by substantial evidence. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r*, 299 F. App'x 516, 522 (6th Cir. 2008). The Court may not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

The substantial-evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley v. Comm'r*, 581 F.3d 399, 405 (6th Cir. 2009). A reviewing court decides only whether substantial evidence supports the ALJ's decision. *Id.* If it does, the court affirms the decision even in the face of substantial evidence supporting the opposite conclusion. *Id.*

**The ALJ did not consider the clinical evidence
that underlay the VA disability rating due to PTSD.**

Plaintiff is a Veteran of the Gulf War Era, who served in the Army in Afghanistan as a combat medic. [Doc. 6 at 489, 631]. Plaintiff argues that his "service broke him up physical and mentally." [Doc. 11 at PageID.1789].

Mentally, Plaintiff suffers from PTSD due to exposure to human suffering, including being tasked with the care of women and children who had been maimed and brutalized by the Taliban. *Id.* at 631-32.

Plaintiff argues that the ALJ erred in not considering the clinical evidence related to his post-traumatic stress disorder (PTSD), which appears in his Department of Veterans affairs (VA) records at pages 1599 and 1600 of the administrative record:

> Curiously, the ALJ omits almost all references to Mr. Sailer's medical records and disability findings by the Veteran's Administration. The ALJ mentions that he is not bound by the Veteran's Administration's findings. While this is a correct statement, the Act does not direct an ALJ to ignore relevant evidence; particularly of a combat veteran suffering from Post Traumatic Stress-Syndrome. The Veteran's Administration review of Mr. Sailer's records and their individual exams

> demonstrated a significant PTSD component to Mr. Sailer's disabilities. In their decision dated September 16, 2019, they found that the records indicated an award of 70% for his formally diagnosed PTSD with insomnia based on: occupational and social impairment in most areas, depressed mood, suicidal ideation, near continuous depression affecting functional ability at home and work, chronic sleep impairment, panic attacks, and anxiety. TR 1599,1560. At the March 2022 hearing before ALJ Hall, Mr. Sailer testified that the conditions relating to his VA award were still extant. TR 93.

[Doc. 11 at PageID.1789].  For the reasons below, the argument is persuasive.

VA psychiatrist Patrick L. Burba, M.D., and VA board-certified psychiatric-mental health nurse practitioner (PMHNP-BC) Andrea D. Brewer treated Plaintiff for PTSD. *Id.* at 1638.

On September 16, 2019, the VA issued a decision finding that, effective August 6, 2018, Plaintiff is 100% disabled, with a 70% disability attributable to post traumatic stress disorder (PTSD). *Id.* at 489-90.[1] Previously, Plaintiff was deemed 70% disabled, with 50% attributable to PTSD. *Id.*

The increased PTSD disability rating was due to the presence (as of August 6, 2018) of new clinical symptoms:

> Occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood
>
> Suspiciousness
>
> Depressed mood
>
> Suicidal ideation
>
> Near-continuous depression affecting the ability to function independently, appropriately, and effectively
>
> Disturbances of motivation and mood
>
> Mental condition has been formally diagnosed
>
> Chronic sleep impairment

---

[1] Additionally, Plaintiff has service-related physical injury, resulting in a VA disability of 50% attributable to migraine headaches; 40% due to syringomyelia, T1-T3 fracture, and early degenerative changes of the lower thoracic spine; 30% due to degenerative arthritis of the cervical spine; 10% to 20% due to radiculopathy affecting four extremities; and 10% to 20% due to injury affecting two knees. [Doc. 6 at 489-90].

>Near-continuous panic affecting the ability to function independently, appropriately, and effectively
>
>Panic attacks more than once a week
>
>Flattened affect
>
>Anxiety
>
>Difficulty in establishing and maintaining effective work and social relationships

*Id.* at 1599-1600. However, Plaintiff's clinical symptoms fell short (as of August 6, 2018) of the following clinical symptoms, which would have justified a finding of 100% VA disability attributable to PTSD:

>Gross impairment in thought processes or communication
>
>Persistent delusions or hallucinations
>
>Grossly inappropriate behavior
>
>Persistent danger of hurting self or others
>
>Intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene)
>
>Disorientation to time or place
>
>Memory loss for names of close relatives, own occupation, or own name

*Id.* at 1600.

In his application for Disability Insurance Benefits (DIB), Plaintiff alleges that he became disabled on May 29, 2018, and the ALJ found lack of disability for the period from May 29, 2018, through March 31, 2022, when his status for insured for DIB expired. *Id.* at 33.

In evaluating Plaintiff's limitations due to PTSD during this period, the ALJ failed to consider the clinical evidence that underlay the VA's decision of 70% VA disability as of August 6, 2018. The ALJ considered that evidence only in the context of not being bound by it:

>[Plaintiff] was granted service connected disability by the VA (Exhibit 1D, 18F/3 and 24F/16), which included 20 percent for a left upper extremity radiculopathy, 20 percent for degenerative arthritis of the cervical spine, 50 percent for migraine headaches, 20 percent for right upper extremity radiculopathy, and 50 percent for PTSD. He had a combined rating of 90 percent

5

effective June 2016. While this rating certainly impacts his military status disability compensation as a civilian, it is not a measurement of his level of disability under the Social Security Act and Regulations. Reasonably, his VA disability rating establishes, at minimum, that his impairments significantly impact his overall physical and mental abilities. The Administrative Law Judge makes a similar conclusion herein, but is not bound by another agency determination. He was subsequently granted a 100 percent VA disability rating in September 2019.

*Id.* at 30.

20 C.F.R. § 404.1504 provides the applicable legal standards for the Commissioner's consideration of VA disability ratings and the **evidence underlying** such ratings:

Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs, the Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers— make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules.  Therefore, in claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits.  However, **we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim** in accordance with § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504 *(emphasis added)*.

The ALJ correctly found that the VA disability rating of 70% due to PTSD is not binding on the Commissioner.  However, the ALJ's decision does not reflect consideration of "all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim" as required by 20 C.F.R. § 404.1504.  Specifically, the ALJ's decision did not mention the clinical symptoms (effective August 6, 2018) that underlay the 70% VA disability rating due to PTSD.  Nor did the ALJ mention the Plaintiff's treatment records with Dr. Burba or Nurse Brewer.

Like Plaintiff, the plaintiff in *Clay v. Comm'r*, No. 5:17-CV-00045-LLK, 2018 WL 11466436 (W.D. Ky. Feb. 23, 2018) was a Gulf War Era veteran with service-related PTSD.  The ALJ in *Clay* properly found that the Commissioner was not bound by the VA rating.  But the ALJ erred in failing to consider the evidence

underlying those ratings, including favorable completion of the PTSD Disability Benefits Questionnaire by the VA clinical psychologist:

> [That the ALJ is not bound to the VA rating] does not mean, however, that medical evidence generated as part of the VA disability evaluation process may not be binding or may be ignored under the rubric of the non-binding nature of the decision itself. *See Hicks v. Comm'r of Soc. Sec.*, No. 1:15-cv-110, 2016 WL 490049, at *7 (S.D. Ohio Jan. 6, 2016) (holding that, although a VA disability rating is not binding, this does not provide an ALJ "carte blanche" to reject "the objective evidence cited in the [VA] Disability Decision") and *Golden v. Comm'r*, No. 3:14-CV-492, 2015 WL 8917876 (E.D. Tenn. Nov. 23, 2015) (remanding case for consideration of examining VA psychiatrist's opinion that formed the underlying basis for VA's increasing disability rating due to PTSD from 70 to 100 percent).

Similarly, the ALJ in the present case erred in failing to discuss the clinical symptoms that underlay the VA's determination of 70% disability attributable to PTSD as of August 6, 2018, within the period adjudicated by the ALJ of May 29, 2018, through March 31, 2022.

### The ALJ's physical RFC finding for sedentary work appears to be internally inconsistent and at odds with the ALJ's ultimate finding of lack of disability due to ability to perform medium jobs.

As stated above, Plaintiff argues that his "service broke him up physical and mentally." [Doc. 11 at PageID.1789].  Physically, as a combat infantry medic deployed in the mountains of Afghanistan, Plaintiff frequently carried loads on missions upwards of 100 pounds or more, but he is only 5'8" and weighed 163 pounds. *Id.* at 1783.  This resulted in degenerative arthritis of the cervical spine and feet and associated radiculopathy affecting the extremities.

As noted above, the ALJ found that, during the relevant period between May 29, 2018, and March 31, 2022, notwithstanding his physical impairments, Plaintiff had a residual functional capacity (RFC) to:

> … perform medium work as defined in 20 CFR 404.1567(c) except he occasionally needed to use a cane for ambulation … could stand/walk six hours in an eight-hour workday … could sit six hours in an eight-hour workday … could lift and carry, and push/pull 50 pounds occasionally and 25 pounds frequently … could frequently climb ramps and stairs, and occasionally climb ladders, ropes and scaffolds … could frequently stoop, kneel, crouch and crawl … needed to avoid concentrated exposure to vibrations and to hazards including unprotected heights and moving mechanical parts[.]

*Id.* at 20.  The ALJ concluded that Plaintiff is not disabled because he retains the ability to perform a significant number of unskilled, **sedentary** (as opposed to medium) jobs in the national economy such as document preparer, parts inspector, and lens inserter.  *Id.* at 32.

Although Plaintiff does not make the argument,[2] the ALJ's RFC finding for sedentary work appears to be internally inconsistent and at odds with an ability to perform medium work.  It is unclear how a person who needs to occasionally use a cane for ambulation can sustain a job that requires him to occasionally climb ladders, ropes, and scaffolds and that requires him to frequently stoop, kneel, crouch, and crawl.  Additionally, it is unclear why, if the ALJ believed that Plaintiff can perform medium work, the ALJ's ultimate finding of lack of disability was based on an ability to ability to perform sedentary jobs.

On remand, the ALJ should eliminate or clarify the above tensions.

**Plaintiff's remaining arguments are unpersuasive.**

Plaintiff's remaining arguments call into question whether the ALJ's physical residual functional capacity (RFC) finding for medium work is supported by substantial evidence.

The Commissioner correctly points out that, under the guise of substantial evidence review, the Court must not reweigh the evidence or reassess credibility:

> [T]he Court does not re-weigh evidence. Indeed, the Court "may not try the case de novo nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992); *see Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 588 (6th Cir. 2019) ("This [C]ourt does not weigh evidence, assess credibility, or resolve conflicts in testimony—that's the ALJ's job."). And the Court is not empowered to reweigh the evidence. *Price v. Comm'r Soc. Sec.*, 342 F. App'x 172, 174 (6th Cir. 2009).

[Doc. 13].

---

[2] Ordinarily, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  *Rice v. Comm'r*, 169 F. App'x 452, 454 (6th Cir. 2006); *see also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (A plaintiff's failure to develop her argument in a more than "skeletal way," leaving it for the Court to "put flesh on its bones," results in waiver.).  However, in this case, the Court will exercise its discretion to consider this issue for two reasons.  First, a judicial disturbance of the Commissioner's final decision is required (in any event) because of the decision's failure to address the clinical evidence underlying the VA disability rating for PTSD.  Second, the internal inconsistency appears on the face of the decision.

The Court agrees with Plaintiff that the ALJ overemphasized his activity as a martial arts instructor. The ALJ's decision mentions Plaintiff's "martial arts," "judo" and/or "jujitsu" activities 17 times (on practically every page of the ALJ's 19-page decision). [Doc. 6 at 15-33]. This seems excessive in light of Plaintiff's testimony that these activities consisted of teaching self-defense to a 10-year-old, 50-pound girl a few times a month for 30 minutes at a time, and that the lessons did not involve physical combat, punching, kicking, or somersaults – just "teaching that bully-proof mindset and helping the girl avoid these situations altogether," with some "static techniques that would help her in the event that she was attacked." *Id.* at 70. But the Court is unable to assess the impact of this overemphasis without reweighing the evidence or reassessing credibility, which the Court is forbidden from doing because "that's the ALJ's job." *Dyson v. Comm'r*, 786 F. App'x 586, 588 (6th Cir. 2019).

The Court agrees with Plaintiff that the ALJ erred in stating that Plaintiff "attended one podiatrist office visit in June 2020 … but there is no evidence of further podiatrist or other treatment." [Doc. 8 at 23]. In fact, in February 2021, Plaintiff visited doctor of podiatric medicine (DPM) Chadwick Bassi to discuss submitting to arthrodesis surgery on the first metatarsophalangeal joint (MTPJ) of the left foot. *Id.* at 1522. At the hearing, the ALJ asked Plaintiff if he was "still contemplating doing that surgery," and Plaintiff responded "[i]t's just a matter of working out the logistics." *Id.* at 63. But this error does not warrant judicial determination of Plaintiff's RFC, which is reserved to the Commissioner.

Niranjan Siva, M.D., treated Plaintiff for migraines beginning in 2016, and Dr. Siva prescribed Norco, Zofran, Ultram, Oxycodone, Roxicodone, Soma, Marinol, Frovatriptan, Celebrex, Phenergan, and Percocet for the pain. Plaintiff was prescribed 10-325[3] mg of Percocet per day. These medications have serious side effect consisting of sedation and fatigue. The Court agrees with Plaintiff that the ALJ did not

---

[3] According to the Commissioner, the "10" in "10-325" refers to the amount of oxycodone, and the "325" refers to the amount of acetaminophen. [Doc. 13].

detail the side-effects of prescribed migraine medication. But it remains the ALJ's, not the Court's job, to determine the limiting effects of pain and other subjective symptoms.

The Court agrees with Plaintiff that the ALJ did not acknowledge his unsuccessful attempts to sustain the physical demands of working as an emergency medical technician (EMT) and deputy jailer. But that deficiency does not warrant judicial disturbance of the Commissioner's final decision.

**Order**

Because the Administrative Law Judge's (ALJ's) decision is not supported by substantial evidence, this matter is hereby REMANDED to the Commissioner for a new decision and any further proceedings deemed necessary and appropriate by the Commissioner.

May 23, 2024

Lanny King, Magistrate Judge
United States District Court